1
2
3
4
5
6
7

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WASHINGTON**

8

9   GEORGE ASSAD,

10              Plaintiff,                          NO.

11        v.                                        **COMPLAINT FOR VIOLATION OF**
                                                    **SECTIONS 14(A) AND 20(A)**
12   MINES MANAGEMENT, INC., GLENN                  **OF THE SECURITIES EXCHANGE**
     DOBBS, RUSSELL C. BABCOCK,                     **ACT OF 1934**
13   DOUGLAS D. DOBBS, ROY G. FRANKLIN,
     JERRY G. POGUE, ROBERT L. RUSSELL,             **Demand for Jury Trial**
14   HECLA MINING COMPANY, and
15   HL IDAHO CORP.,

16              Defendants.

17
         Plaintiff George Assad ("Plaintiff"), by his undersigned attorneys, alleges upon personal
18
     knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the
19
     investigation of counsel as to all other allegations herein, as follows:
20
                              **I.    NATURE OF THE ACTION**
21
         1.     This action stems from a proposed transaction announced on May 24, 2016 (the
22
     "Proposed Transaction"), pursuant to which Mines Management, Inc. ("Mines Management" or
23
     the "Company") will be acquired by Hecla Mining Company ("Parent") and its wholly-owned
24
     subsidiary, HL Idaho Corp. ("Merger Sub," and together with Parent, "Hecla").
25
         2.     On May 23, 2016, Mines Management's Board of Directors (the "Board" or
26
     "Individual Defendants," and together with Mines Management and Hecla, "Defendants")
27

COMPLAINT FOR VIOLATION OF SECTIONS
14(a) AND 20(a) - 1

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

1   caused the Company to enter into an agreement and plan of merger (the "Merger Agreement"),
2   pursuant to which stockholders of Mines Management will receive 0.2218 shares of Parent for
3   each share of Mines Management they own.

4       3.      On June 29, 2016, Defendants issued materially incomplete and misleading
5   disclosures in the Form S-4 Registration Statement (the "Registration Statement") filed with the
6   United States Securities and Exchange Commission ("SEC") in connection with the Proposed
7   Transaction.  The Registration Statement is deficient and misleading in that it fails to provide
8   adequate disclosure of all material information related to the Proposed Transaction.

9       4.      Accordingly, Plaintiff alleges herein that Defendants violated Sections 14(a) and
10  20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the
11  Registration Statement.

12                      **II.      JURISDICTION AND VENUE**

13      5.      This Court has jurisdiction over the claims asserted herein pursuant to Section 27
14  of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the
15  1934 Act and Rule 14a-9.

16      6.      This Court has jurisdiction over Defendants because each Defendant is either a
17  corporation that conducts business in and maintains operations within this District, or is an
18  individual with sufficient minimum contacts with this District so as to make the exercise of
19  jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

20      7.      Venue is proper under 28 U.S.C. § 1391(b) because a substantial portion of the
21  transactions and wrongs complained of herein occurred in this District.

22                              **III.      PARTIES**

23      8.      Plaintiff is, and has been continuously throughout all times relevant hereto, the
24  owner of Mines Management common stock.

25      9.      Defendant Mines Management is an Idaho corporation and maintains its principal
26  executive offices at 905 West Riverside Avenue, Suite 311, Spokane, Washington 99201.  The

27  COMPLAINT FOR VIOLATION OF SECTIONS
    14(a) AND 20(a) - 2

Company is a mineral company focused on the acquisition and exploration of silver dominant mineral deposits. Mines Management's common stock is traded on the NYSE MKT under the ticker symbol "MGN."

10.    Defendant Glenn Dobbs ("G. Dobbs") is a director of Mines Management. According to the Company's website, G. Dobbs is Chairman of the Board and Chief Executive Officer ("CEO") of the Company.

11.    Defendant Russell C. Babcock ("Babcock") is a director of Mines Management. According to the Company's annual proxy statement filed with the SEC on April 28, 2016 (the "Annual Proxy"), Babcock is a member of the Audit and Finance Committee, the Nominating Committee, and the Compensation Committee.

12.    Defendant Douglas D. Dobbs ("D. Dobbs") has served as a director of Mines Management since 2002. According to the Company's website D. Dobbs is President of the Company.

13.    Defendant Roy G. Franklin ("Franklin") is a director of Mines Management. According to the Annual Report, Franklin is a member of the Audit and Finance Committee, the Nominating Committee, and the Compensation Committee.

14.    Defendant Jerry G. Pogue ("Pogue") is a director of Mines Management. According to the Annual Report, Pogue is a member of the Nominating Committee and the Compensation Committee.

15.    Defendant Robert L. Russell ("Russell") has served as a director of Mines Management since March 1999. According to the Annual Report, Russell is a member of the Audit and Finance Committee and the Nominating Committee.

16.    The Defendants identified in paragraphs 10 through 15 are collectively referred to herein as the "Individual Defendants."

17.    Defendant Parent is a Delaware corporation with its corporate headquarters located at 6500 North Mineral Drive, Suite 200, Coeur d'Alene, Idaho 83815.

COMPLAINT FOR VIOLATION OF SECTIONS
14(a) AND 20(a) - 3

18.     Defendant Merger Sub is an Idaho corporation and a wholly-owned subsidiary of Parent.

## IV.     CLASS ACTION ALLEGATIONS

19.     Plaintiff brings this action as a class action on behalf of himself and the other public stockholders of Mines Management (the "Class").   Excluded from the Class are Defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any Defendant.

20.     This action is properly maintainable as a class action.

21.     The Class is so numerous that joinder of all members is impracticable.  As of May 13, 2016, there were approximately 31,643,704 shares of Mines Management common stock outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

22.     Questions of law and fact are common to the Class, including, among others: (i) whether Defendants violated the 1934 Act; and (ii) whether Defendants will irreparably harm Plaintiff and the other members of the Class if Defendants' conduct complained of herein continues.

23.     Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature.  Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff has the same interests as the other members of the Class.  Accordingly, Plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

24.     The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for Defendants, or adjudications that would, as a practical matter, be dispositive of the interests of individual members of the Class who are not parties to the

COMPLAINT FOR VIOLATION OF SECTIONS
14(a) AND 20(a) - 4

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

adjudications or would substantially impair or impede those non-party Class members' ability to protect their interests.

25.    Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class.  Therefore, injunctive relief on behalf of the Class is appropriate.

## V.    SUBSTANTIVE ALLEGATIONS

### A. Background of the Company

26.    Mines Management was founded in 1947 and is a U.S.-based mineral exploration and development company engaged in the acquisition, exploration, and development of silver-dominant mineral projects.

27.    The Company's current focus is advancement and development of the Montanore Silver-Copper Deposit, one of the largest silver-copper deposits in the world.

28.    The deposit is located in northwestern Montana, approximately forty miles north of the famed Silver Valley of Idaho, within one of the world's most prolific silver districts.

29.    Mines Management acquired the Montanore deposit in 2002 when its partner and operator, Noranda Minerals of Canada, withdrew.

30.    On February 12, 2016, Mines Management issued a press release wherein it reported that Records of Decision ("ROD") approving development of the Montanore Mine Project were issued by the U.S. Forest Service ("USFS") and the Montana Department of Environmental Quality ("MDEQ").

31.    The agencies' decisions approved the project defined in the preferred alternative as outlined in the Joint Final Environmental Impact Statement ("EIS") previously announced on December 21, 2015, and provided a path forward for development of the project.

32.    MDEQ's conditioned approval amended the previously-existing state Hard Rock Operating Permit #00150 to conform with provisions of the RODs, and issued the Certificate of

Compliance permit for the electrical transmission line and the Air Quality Permit for construction and operation up to 20,000 tons per day.

33.    With respect to this milestone, Individual Defendant G. Dobbs, the Company's Chairman and CEO, commented:

> We have crossed the goal line. The Record of Decision is the major approval to complete the final evaluation and development of the project contingent upon compliance with its conditions. We are excited to have completed the eleven year permitting process that included two draft Environmental Impact Statements and at least three rounds of public comment[.]
>
> It has been a long journey. Many naysayers said it couldn't be done, but we did it. This monumental undertaking couldn't have been accomplished without the support, hard work and dedication of many people in the communities of Libby and Lincoln County, Company staff, government agency personnel, elected officials, and our team of consultants including Klepfer Mining Services who oversaw the permitting process from beginning to end. Once fully developed and operating, the Montanore Mine will make a major contribution to the vitality of the local community and the state of Montana for many years to come.

**B.  Process Leading Up to the Merger Agreement**

34.    According to the Registration Statement, beginning in 2011, Mines Management and Hecla discussed a potential strategic transaction, including a joint venture with respect to the Montanore Project or a business combination.

35.    In March 2015, Mines Management entered into confidentiality agreements with an undisclosed number of potential bidders.  The Registration Statement fails to disclose whether the confidentiality agreements contained standstill and/or "don't ask, don't waive" ("DADW") provisions.

36.    On May 8, 2015, Mines Management and Hecla entered into a confidentiality agreement.  The Registration Statement fails to disclose whether the confidentiality agreement contained standstill and/or DADW provisions.

37.    Mines Management subsequently received two proposals: one from Hecla and the second from another third party ("Party A").  The Registration Statement fails to disclose the

COMPLAINT FOR VIOLATION OF SECTIONS
14(a) AND 20(a) - 6

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

1    terms of the proposals.

2    38.    In July 2015, Mines Management sent out requests for proposals regarding

3    financing and Montanore Project joint venture or business combination transactions to private

4    equity funds and exploration and mining companies, including Hecla.    The Company

5    concurrently engaged an undisclosed financial advisor.

6    39.    On July 31, 2015, Hecla submitted an indicative term sheet for a senior secured

7    convertible debt facility to be made available to Mines Management and a joint venture between

8    Hecla and Mines Management with respect to the Montanore Project.    The letter proposed a $9.0

9    million revolving loan for Mines Management and a joint venture that would own the Montanore

10   Project in which Hecla would have a 70% interest and Mines Management would have a 30%

11   interest.    The Registration Statement fails to disclose the financial terms of the joint venture.

12   40.    On August 4, 2015, Mines Management rejected Hecla's proposal.

13   41.    In October 2015, the Company ended the engagement of the undisclosed financial

14   advisor that the Company engaged in July.

15   42.    In March 2016, Mines Management engaged an undisclosed financial advisor.

16   The Registration Statement fails to disclose whether this was the same financial advisor

17   terminated in October 2015.    The second engagement ended in mid-March.    Then on March 21,

18   2016, Mines Management announced that it retained Canaccord Genuity Corp. ("CG") as the

19   Company's financial advisor.

20   43.    In March 2016, the Company entered into negotiations with a mining company

21   ("Party B") regarding a potential transaction.    Discussions with Party B terminated in mid-April.

22   44.    On April 4, 2016, Hecla submitted an indicative letter of interest to acquire the

23   Company for 0.2359 Hecla shares for each share of Mines Management common stock.    On

24   April 21, Hecla revised its offer to 0.2597 Hecla shares for each share of Mines Management

25   common stock, valued at $1.00 per share.

26   45.    On May 10, 2016, the Board met – apparently for the first time – regarding the

27

COMPLAINT FOR VIOLATION OF SECTIONS
14(a) AND 20(a) - 7

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

proposed transaction with Hecla, and appointed a special committee (the "Special Committee") comprised of Individual Defendants Babcock, Franklin, Pogue, and Russell.

46.     On May 16, 2016, Hecla decreased its proposal to $0.95 per share payable in Hecla common stock.

47.     Nevertheless, on May 21, 2016, the Special Committee and Board approved the Proposed Transaction with Hecla.  Two days later, the parties executed the Merger Agreement.

**C. The Merger Agreement and Proposed Transaction**

48.     On May 23, 2016, the Board caused Mines Management to enter into the Merger Agreement, pursuant to which the Company will be acquired by Hecla, and stockholders of Mines Management will receive 0.2218 shares of Parent for each share of Mines Management they own.

49.     The Individual Defendants have all but ensured that another entity will not emerge with a competing proposal by agreeing to a "no solicitation" provision in the Merger Agreement that prohibits the Individual Defendants from soliciting alternative proposals and severely constrains their ability to communicate and negotiate with potential buyers who wish to submit or have submitted unsolicited alternative proposals.  Section 6.4.1 of the Merger Agreement states:

> The Company shall not, and shall cause its Subsidiaries not to, and shall not authorize or permit any Company Representative to, directly or indirectly, solicit, initiate or knowingly take any action to facilitate or encourage the submission of any Takeover Proposal or the making of any proposal that could reasonably be expected to lead to any Takeover Proposal, or, subject to Section 6.4.2, (i) (a) conduct or engage in any discussions or negotiations with, (b) disclose any non-public information relating to the Company or any of its Subsidiaries to, (c) afford access to the business, properties, assets, books or records of the Company or any of its Subsidiaries to, or (d) knowingly assist, participate in, facilitate or encourage any effort by, any third party that is seeking to make, or has made, any Takeover Proposal, (ii) (a) amend or grant any waiver or release under any standstill or similar agreement with respect to any class of equity securities of the Company or any of its Subsidiaries except a confidentiality agreement as contemplated by Section 6.4.2 or (b) approve any transaction under, or any third party becoming an "interested shareholder" under, the BCA, or (iii) enter into any agreement in principle, letter of intent,

COMPLAINT FOR VIOLATION OF SECTIONS
14(a) AND 20(a) - 8

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

term sheet, acquisition agreement, merger agreement, option agreement, joint venture agreement, partnership agreement or other Contract relating to any Takeover Proposal except a confidentiality agreement as contemplated by Section 6.4.2 (each, a "Company Acquisition Agreement"). Subject to Section 6.4.2, neither the Company Board nor any committee thereof shall (v) fail to make, withdraw, amend, modify or materially qualify, in a manner adverse to Parent or Merger Sub, the Company Recommendation, (w) recommend a Takeover Proposal, (x) fail to recommend against acceptance of any tender offer or exchange offer for the shares of Company Stock within ten Business Days after the commencement of such offer, (y) make any public statement inconsistent with the Company Recommendation, or (z) resolve or agree to take any of the foregoing actions (any of the foregoing, a "Company Adverse Recommendation Change"). The Company shall, and shall cause its Subsidiaries to, cease immediately and cause to be terminated, and shall not authorize or knowingly permit any Company Representatives to continue, any and all existing activities, discussions or negotiations, if any, with any third party conducted prior to the date hereof with respect to any Takeover Proposal and shall use commercially reasonable efforts to cause any such third party (or its agents or advisors) in possession of non-public information in respect of the Company or any of its Subsidiaries that was furnished by or on behalf of the Company and its Subsidiaries to return or destroy (and confirm destruction of) all such information.

50.    Section 6.4.1 of the Merger Agreement further prohibits the Company from amending or granting any waiver or release under any standstill or similar agreement with respect to any class of equity securities of the Company or any of its subsidiaries (except "a confidentiality agreement as contemplated by Section 6.4.2").

51.    Further, the Company must advise Hecla, within twenty-four hours, of any proposals or inquiries received from other parties, including, inter alia, the material terms and conditions of the proposal and the identity of the party making the proposal. Section 6.4.3 of the Merger Agreement states, in relevant part:

The Company shall notify Parent promptly (but in no event later than 24 hours) after it obtains Knowledge of the receipt by the Company (or any of the Company Representatives) of any Takeover Proposal, any inquiry that would reasonably be expected to lead to a Takeover Proposal, or any request for non-public information relating to the Company or any of its Subsidiaries or for access to the business, properties, assets, books or records of the Company or any of its Subsidiaries by any third party. In such notice, the Company shall identify the third party making, and details of the material terms and conditions of, any such Takeover Proposal, indication or request. The Company shall

COMPLAINT FOR VIOLATION OF SECTIONS
14(a) AND 20(a) - 9

1
2
3
4
5
6
7
8

keep Parent fully informed, on a current basis, of the status and material terms of any such Takeover Proposal, indication or request, including any material amendments or proposed amendments as to price and other material terms thereof. The Company shall provide Parent with at least 48 hours prior notice of any meeting of the Company Board (or such lesser notice as is provided to the members of the Company Board) at which the Company Board is reasonably expected to consider any Takeover Proposal. The Company shall promptly (but in no event later than 24 hours) provide Parent with a list of any non-public information concerning the Company's business, present or future performance, financial condition or results of operations provided to any third party in connection with the receipt by the Company (or any of the Company Representatives) of any such Takeover Proposal, indication or request and copies of such information to the extent not previously provided to Parent.

9
10
11
12

52.    Moreover, the Merger Agreement contains a highly restrictive "fiduciary out" provision permitting the Board to withdraw its approval of the Proposed Transaction under extremely limited circumstances, and grants Hecla a "matching right" with respect to any "Superior Proposal" made to the Company.  Section 6.4.4 of the Merger Agreement provides:

13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

Except as set forth in this Section 6.4.4, the Company Board shall not make any Company Adverse Recommendation Change or enter into (or permit any Subsidiary to enter into) a Company Acquisition Agreement. At any time prior to the receipt of the Shareholder Approval, in response to a Superior Proposal, the Company Board may make a Company Adverse Recommendation Change, take an action otherwise prohibited under Section 6.4.1(ii) or, subject to compliance with Section 8.1(iii)(b), enter into (or permit any Subsidiary to enter into) a Company Acquisition Agreement, if: (i) the Company promptly notifies Parent, in writing, at least three Business Days (the "Notice Period") before making a Company Adverse Recommendation Change, taking an action otherwise prohibited under Section 6.4.1(ii) or entering into (or causing a Subsidiary to enter into) a Company Acquisition Agreement, of its intention to take such action with respect to a Superior Proposal, which notice shall state expressly that the Company has received a Takeover Proposal that the Company Board intends to declare a Superior Proposal and that the Company Board intends to make a Company Adverse Recommendation Change, or take an action otherwise prohibited under Section 6.4.1(ii) or the Company intends to enter into a Company Acquisition Agreement; (ii) the Company attaches to such notice the most current version of the proposed Company Acquisition Agreement (which version shall be updated on a prompt basis) and identifies the third party making such Superior Proposal; (iii) the Company shall, and shall cause its Subsidiaries to, and shall use its reasonable best efforts to cause the Company Representatives to, during the Notice Period, negotiate with Parent in good faith to make such adjustments in the terms and conditions of this Agreement so that such Takeover Proposal ceases to constitute a Superior

COMPLAINT FOR VIOLATION OF SECTIONS
14(a) AND 20(a) - 10

Proposal, if Parent, in its discretion, proposes to make such adjustments (it being agreed that, in the event that after commencement of the Notice Period, there is any material revision to the terms of a Superior Proposal, including any revision in price, the Notice Period shall, if less than two Business Days remain before the expiration of such Notice Period, be automatically extended to two Business Days from the date on which the Company notifies Parent of any such material revision (it being understood that there may be multiple extensions)); and (iv) the Company Board determines in good faith, after consulting with outside legal counsel and an independent financial advisor, that such Takeover Proposal continues to constitute a Superior Proposal after taking into account any adjustments made by Parent during the Notice Period in the terms and conditions of this Agreement and that the failure to accept such Superior Proposal would reasonably be expected to cause the Company Board to be in breach of its fiduciary duties under applicable Law.

53.      The Merger Agreement also contains a provision for a "termination fee" of $1 million, payable by the Company to Hecla if the Individual Defendants cause the Company to terminate the Merger Agreement.  The Company must also reimburse Hecla's expenses up to $200,000.

54.      By agreeing to the deal protection devices, the Individual Defendants have locked up the Proposed Transaction and have precluded other bidders from making successful competing offers for the Company.

55.      The consideration to be paid to Plaintiff and the Class in the Proposed Transaction is unfair and inadequate because, among other things, the intrinsic value of the Company is materially in excess of the amount offered in the Proposed Transaction.

56.      Based on Hecla's closing stock price on May 23, 2016, Mines Management stockholders will receive only approximately $0.94 per share as a result of the Proposed Transaction.  However, according to *Yahoo! Finance*, as of the announcement of the Proposed Transaction, at least one analyst has set a price target for Mines Management of $4.00 per share.

57.      The Proposed Transaction consideration also fails to adequately compensate the Company's stockholders for the significant synergies created by the merger.

58.      Accordingly, the Proposed Transaction will deny Class members their right to share proportionately and equitably in the true value of the Company's valuable and profitable

COMPLAINT FOR VIOLATION OF SECTIONS
14(a) AND 20(a) - 11

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

1  business, and future growth in profits and earnings.

2  **D.  The Materially Incomplete and Misleading Registration Statement**

3      59.    Defendants filed the Registration Statement with the SEC in connection with the

4  Proposed Transaction.  As alleged below and elsewhere herein, the Registration Statement omits

5  material information that must be disclosed to Mines Management's stockholders to enable them

6  to render an informed decision with respect to the Proposed Transaction.

7      60.    The Registration Statement omits material information with respect to the process

8  and events leading up to the Proposed Transaction, as well as the opinions and analyses of Mines

9  Management's financial advisor, CG.  This omitted information, if disclosed, would significantly

10  alter the total mix of information available to Mines Management's stockholders.

11      61.    For example, and significantly, the Registration Statement fails to disclose Mines

12  Management's financial projections.

13      62.    The Registration Statement fails to disclose Hecla's financial projections.

14      63.    The Registration Statement fails to provide a valuation summary detailing the

15  calculation of Mines Management's fully diluted shares, equity value (at the unaffected price and

16  the offer price), and enterprise value (at the unaffected price and the offer price), as well as the

17  calculated pricing multiples.

18      64.    With respect to CG's *Precedent Transactions Multiple Analysis*, the Registration

19  Statement fails to: (i) explain "development stage," including how it was measured and the

20  respective stages of Mines Management and its peers; (ii) disclose the observed transaction-by-

21  transaction enterprise values and reserve figures; (iii) disclose the other pricing multiples and

22  financial metrics examined; and (iv) explain "All Transaction Precedents."

23      65.    With respect to CG's *Comparable Companies Analysis*, the Registration

24  Statement fails to disclose the company-by-company reserve figures, as well as the other pricing

25  multiples and financial metrics examined.

26      66.    The Registration Statement fails to disclose a fair summary of any discounted

27

COMPLAINT FOR VIOLATION OF SECTIONS
14(a) AND 20(a) - 12

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

cash flow analysis performed by CG, or the basis for CG's failure to perform such analysis.

67.     The Registration Statement fails to disclose whether the confidentiality agreements entered into by the Company and potential bidders contained standstill and/or DADW provisions.

68.     The Registration Statement fails to disclose the terms of the proposals submitted by Hecla and Party A in mid-2015.

69.     The Registration Statement fails to disclose the financial terms of the joint venture proposal submitted by Hecla on July 31, 2015.

70.     The Registration Statement fails to disclose the timing and nature of all communications regarding future employment or directorship of Mines Management's officers and directors, including who participated in all such communications, as well as whether any agreements have been reached regarding post-transaction employment or directorships.

71.     Additionally, with respect to CG's engagement, the Registration Statement fails to disclose the circumstances under which CG's fees "may be paid in the form of freely tradeable common stock of Hecla," as well as the amount of the "success fee" to be paid by Mines Management to CG.

## VI.     COUNT I

### Claim for Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and Mines Management

72.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

73.     The Individual Defendants disseminated the false and misleading Registration Statement, which contained statements that, in violation of Section 14(a) of the 1934 Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading.   Mines Management is liable as the issuer of these statements.

74.     The Registration Statement was prepared, reviewed, and/or disseminated by the Individual Defendants.   By virtue of their positions within the Company, the Individual

COMPLAINT FOR VIOLATION OF SECTIONS
14(a) AND 20(a) - 13

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

Defendants were aware of this information and their duty to disclose this information in the Registration Statement.

75.    The Individual Defendants were at least negligent in filing the Registration Statement with these materially false and misleading statements.

76.    The omissions and false and misleading statements in the Registration Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction.  In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Registration Statement and in other information reasonably available to stockholders.

77.    The Registration Statement is an essential link in causing Plaintiff and the Company's stockholders to approve the Proposed Transaction.

78.    By reason of the foregoing, Defendants violated Section 14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder.

79.    Because of the false and misleading statements in the Registration Statement, Plaintiff and the Class are threatened with irreparable harm.

## VII.    COUNT II

### Claim for Violation of Section 20(a) of the 1934 Act
### Against the Individual Defendants and Hecla

80.    Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

81.    The Individual Defendants and Hecla acted as controlling persons of Mines Management within the meaning of Section 20(a) of the 1934 Act as alleged herein.  By virtue of their positions as officers and/or directors of Mines Management and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Registration Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.

COMPLAINT FOR VIOLATION OF SECTIONS
14(a) AND 20(a) - 14

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

82.     Each of the Individual Defendants and Hecla was provided with or had unlimited access to copies of the Registration Statement alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

83.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same.  The Registration Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction.  They were thus directly in the making of the Registration Statement.

84.     Hecla also had direct supervisory control over the composition of the Registration Statement and the information disclosed therein, as well as the information that was omitted and/or misrepresented in the Registration Statement.

85.     By virtue of the foregoing, the Individual Defendants and Hecla violated Section 20(a) of the 1934 Act.

86.     As set forth above, the Individual Defendants and Hecla had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the 1934 Act.  As a direct and proximate result of Defendants' conduct, Plaintiff and the Class are threatened with irreparable harm.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.      Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

COMPLAINT FOR VIOLATION OF SECTIONS
14(a) AND 20(a) - 15

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

1      B.      In the event Defendants consummate the Proposed Transaction, rescinding it and

2  setting it aside or awarding rescissory damages;

3      C.      Directing the Individual Defendants to disseminate a Registration Statement that

4  does not contain any untrue statements of material fact and that states all material facts required

5  in it or necessary to make the statements contained therein not misleading;

6      D.      Declaring that Defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as

7  well as Rule 14a-9 promulgated thereunder;

8      E.      Awarding Plaintiff the costs of this action, including reasonable allowance for

9  Plaintiff's attorneys' and experts' fees; and

10     F.      Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff respectfully requests a trial by jury on all issues so triable.

Dated: July 12, 2016

By:  s/ Roger M. Townsend
      Roger M. Townsend
      BRESKIN JOHNSON & TOWNSEND PLLC
      1000 Second Avenue, Suite 3670
      Seattle, WA 98104
      Telephone:  (206) 652-8660
      Facsimile:  (206) 652-8290
      Email:  rtownsend@bjtlegal.com

      Seth D. Rigrodsky
      Brian D. Long
      Gina M. Serra
      Jeremy J. Riley
      RIGRODSKY & LONG, P.A.
      2 Righter Parkway, Suite 120
      Wilmington, DE 19803
      Telephone:  (302) 295-5310
      Facsimile:  (302) 654-7530
      Email:  sdr@rl-legal.com
      Email:  bdl@rl-legal.com
      Email:  gms@rl-legal.com
      Email:  jjr@rl-legal.com

Katharine M. Ryan
Richard A. Maniskas
RYAN & MANISKAS, LLP
995 Old Eagle School Road, Suite 311
Wayne, PA 19087
Telephone:  (484) 588-5516
Facsimile:  (484) 450-2582
Email:  kryan@rmclasslaw.com
Email:  rmaniskas@rmclasslaw.com

*Attorneys for Plaintiff*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

COMPLAINT FOR VIOLATION OF SECTIONS
14(a) AND 20(a) - 17